223 N.J. Super. 316 (1988)
538 A.2d 836
UNION CITY ASSOCIATES, PLAINTIFF-APPELLANT,
v.
CITY OF UNION CITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 13, 1988.
Decided March 7, 1988.
*317 Before Judges FURMAN, LONG and SCALERA.
Mandelbaum & Mandelbaum, attorneys for plaintiff-appellant (Steven R. Irwin, on the brief).
Herbert H. Fine, attorney for defendant-respondent.
The opinion of this court was delivered by LONG, J.A.D.
The issue on this appeal is whether plaintiff, Union City Associates (taxpayer), may invoke the protection of the Freeze Act (N.J.S.A. 54:3-26) to defeat a 1985 increase in its tax assessment by defendant, City of Union City (taxing district).
The taxpayer is the present owner of property located at block 22, lot 1 on Central Avenue in Union City, Hudson County. In 1983, the taxing district assessed the property at $2,700,000  $604,000 for the land and $2,096,000 for improvements. In that year, the property was owned by Washington Park Urban Renewal which sold it to West Park Washington Corporation. Both buyer and seller filed complaints with the Tax Court challenging the assessment in accordance with N.J.S.A. 54:3-21, which permits a direct appeal to the Tax Court if the assessed valuation of the property exceeds $750,000. The seller filed its complaint on August 11, 1983, and the buyer on August 15, 1983. Notice was served upon the clerk and the assessor of the taxing district. On August 26, 1983, the buyer filed a petition with the Hudson County Board of Taxation (county tax board) challenging the same assessment which the board ultimately affirmed. A judgment which recited that the appeal had been "heard and considered" was entered on November 14, *318 1983, by the county tax board. A judgment code number at the bottom of the judgment was designated "zero." An attached list of reasons for judgment showed that the "zero" code is used when there is "no change in assessment", presumably reflecting a judgment of affirmance on the merits. The list of reasons included designations for petitions which are withdrawn (1), have a Tax Court appeal pending (38), have a Tax Court judgment (40D), are dismissed as a duplicate appeal (40S), or are dismissed for lack of jurisdiction (40X). The only reason given for the November 14, 1983 judgment was that there was "no change in the assessment." Neither party filed an appeal to the Tax Court from the county tax board judgment.
On October 13, 1983, the attorneys for the seller sent a letter to the clerk of the Tax Court withdrawing the complaint appealing the 1983 assessment. A judgment of dismissal based on this withdrawal was entered by the Tax Court on November 17, 1983. By letter dated November 15, 1984, the buyer advised the clerk of the Tax Court that its complaint was to be withdrawn as well. The Tax Court judgment dismissing that complaint was entered December 7, 1984.
In 1985 the premises was assessed at $3,700,000, representing $604,000 for the land and $3,096,000 for improvements. Plaintiff, the current owner of the property (as a result of a conveyance from West Park Washington Corporation), relying on the county tax board judgment entered November 14, 1983, challenged the 1985 assessment because it did not afford Freeze Act protection under N.J.S.A. 54:3-26 which provides that:
Where no request for review is taken to the Tax Court to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax *319 year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
The taxing district, which had not filed a complaint in opposition, contended that the Freeze Act was inapplicable to these proceedings.
At a hearing before the Tax Court, David Mandelbaum, attorney for the buyer during the proceedings in 1983, testified that his firm filed the complaint with the Tax Court because income and expense information for the property was not available by August 15, 1983, and the Tax Court did not require this documentation to be filed with the pleadings. (The county tax board would not accept the petition for filing without the income and expense sheet attached). According to Mandelbaum, that year, the time for filing an appeal to the county tax board was extended to September 14, 1983, in accordance with N.J.S.A. 54:3-21.4 and N.J.A.C. 18:12-5.1, which permit such an extension when the taxing distict fails to mail or deliver tax bills before July 15. Therefore, on August 26, 1983, when the income and expense information was received and while the matter was still pending before the Tax Court, Mandelbaum's firm filed a petition with the county tax board challenging the same assessment.
Stanley Kosakowski, Hudson County Tax Administrator, testified that his record of the appeal reflected the notation, "affirmed as assessed." No verbatim record of the proceedings was available because the proceedings were recorded on tape which is erased and reused after one year. Hugh McGuire, the assessor for the taxing district, testified that he recalled asking Daniel Cronheim, the attorney for the seller, to withdraw the petition, but that Cronheim refused. McGuire said that the parties then agreed to take an affirmance of the assessment and that this agreement was made so that the matter could be disposed of by the Tax Court.
Daniel Cronheim, the attorney who appeared for the buyer at the 1983 proceeding, disputed McGuire's testimony. He claimed that he did not withdraw or settle the case and had no *320 recollection of discussing the case with McGuire. He testified further that it was his recollection that the case had been tried. He could not recall whether an expert witness had been presented, but he testified that income and expense statements were submitted to the board and a decision was made.
Without ruling on any of the taxing district's other defenses, the Tax Court judge, 8 N.J. Tax 583 determined that the judgment on which the taxpayer relied was a nullity because a timely Tax Court complaint deprives a county tax board of jurisdiction over a disputed assessment. He thus concluded that the November 14, 1983 judgment could not be the basis of a Freeze Act Claim. We disagree.
N.J.S.A. 2A:3A-1 established the Tax Court as a court of limited jurisdiction pursuant to Article VI, § 1, par. 1 of the New Jersey Constitution (L. 1978, c. 33, § 1, eff. July 1, 1979). Under this statute, the Legislature transferred the tax appeal function from the Division of Tax Appeals in the Department of the Treasury, a state administrative agency, to the Tax Court, a judicial body (L. 1978, c. 33, § 3).
Previously, the Division of Tax Appeals had jurisdiction to hear only those matters on appeal from a county tax board under R.S. 54:2-39, now repealed. Hackensack Water Co. v. Div. of Tax Appeals, 2 N.J. 157, 165 (1949). The legislative scheme under the repealed statutes, R.S. 54:2-35, 54:2-39, was to provide a fair and impartial review and final determination of the original assessments within a reasonable time. City of Newark v. American Realty and Investment Co., 26 N.J. Misc. 238, 240, 58 A.2d 856 (1948). Simultaneously with the establishment of the Tax Court, the Legislature enlarged the function of the Tax Court to handle not only appeals from county tax boards but direct appeals if the assessment of the subject property exceeds $750,000. N.J.S.A. 54:3-21 provides:
A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other *321 property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may, on or before August 15, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer or taxing district may, on or before August 15, file a complaint directly with the tax court, if the assessed valuation of the property subject to the appeal exceeds $750,000.00, and any party to an appeal pending on July 1, 1979 before a county board of taxation in which the assessed valuation of the property involved exceeds $750,000.00 shall be entitled, upon application to the county board, to have the appeal transferred to the tax court by the county board. All appeals to the tax court hereunder shall be in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq.

The language of this statute imposed no restriction on the taxpayer's or the taxing district's entitlement to use either forum, provided the appeal was timely made and the assessment exceeded $750,000. N.J.S.A. 54:3-21. Nor does it support the view that filing in the Tax Court automatically preempts the jurisdiction of a county tax board. The legislation specifically provides that any party to an appeal pending before a county board of taxation on July 1, 1979, which qualifies as to the amount of the assessed value, shall "be entitled, upon application to the county board" to have the matter transferred to the Tax Court (emphasis added). In other words, an applicant who chooses transfer has a legal right to it. But no mandatory transfer is provided for, and presumably, if an applicant opted against transfer, the jurisdiction of a county board would remain undisturbed.
The taxing district argues that the situation is comparable to the exclusive control exercised by the Appellate Division and the Supreme Court over proceedings pending appeal from the time the appeal is taken or the notice of petition for certification filed. R. 2:9-1(a). In our view, this analogy is strained because many aspects of the tax statutes (N.J.S.A. 54:3-11 et seq. and N.J.S.A. 54:51A-1 et seq.), the regulations of the county boards of taxation (N.J.A.C. 18A:12A-1.5 et seq.), and the rules of the Tax Court (R. 8:1 et seq.), constitute a substantial departure from the procedure followed in other civil actions. See for example, R. 8:5-1, R. 8:5-2; R. 8:3-9; N.J.S.A. 54:51A-1(c). Under *322 the circumstances, and in light of the absence of a legislative directive that we do so, we will not engraft provisions of the general court rules onto the tax laws, especially where the result would be a questionable narrowing of the legislatively mandated jurisdiction of the county tax board. In short, we think the Tax Court judge erred in ruling out application of the Freeze Act to the judgment in this case on jurisdictional grounds.
We thus reverse and remand the case to him for disposition of the remaining issues raised by both parties. Of particular importance is a resolution of the question of the circumstances surrounding the entry of the November 14, 1983 judgment. Witnesses who testified before the Tax Court gave very different versions of that event. If Cronheim is fully believed, the judgement is subject to Freeze Act application. Under his version of events, the judgment came after trial as a result of a decision by the county tax board. Even if it was entered as a result of a settlement or by consent, the Freeze Act would still apply. Curtiss Wright Corp. v. Wood-Ridge, 4 N.J. Tax 68, 79-80 (Tax Ct. 1982). On the other hand, if McGuire is believed, the entry of judgment was only a housekeeping matter because the taxpayer agreed to submit the appeal to the Tax Court. Such a judgment, not intended by either party as binding, would obviously not be subject to the Act. Between these poles, the judge might find that the taxpayer believed the judgment to be final, but that the taxing district was somehow misled as to the nature of the proceeding. Such a case might excuse the taxing district's failure to take timely action deflecting a Freeze Act application.
This is by no means an exhaustive list of the possibilities available in this case. It is noted solely by way of example as to the dispositions available, some of which will depend, in the first instance, on a credibility evaluation.
Reversed and remanded.